# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRUNO JOE MANCARI,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the U.S. Social Security Administration,<br><br>Defendant. | No. 15 C 1105<br><br>Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

In this Social Security appeal, the claimant Bruno Mancari asks this Court to reverse the Commissioner's decision to suspend his Old-Age Insurance Benefits because he has been deported to Italy (doc. # 12: Pl.'s Mot. to Reverse). Mr. Mancari contends that the statute upon which the Commissioner's decision relied -- 42 U.S.C. § 402(n)(1)(A), *i.e.*, Section 202(n) of the Social Security Act (the "Act") -- is unconstitutional. Section 202(n) of the Act states that no monthly benefit shall be paid to deported individuals for any month after the Commissioner is notified that the individual has been deported, and that payment cannot be reinstated until the individual is lawfully admitted to the United States for permanent residence. For the reasons that follow, we deny Mr. Mancari's motion and affirm the Commissioner's decision.

### I.

Mr. Mancari does not dispute the ALJ's recitation of the procedural or factual history of this case, which we set forth below.

---

[1] On March 2, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 8).

Mr. Mancari was born in Italy and moved to the United States in May 1958, when he was eight years old (doc. # 12, Ex. 1: Pl.'s Mem. in Supp. of Mot. to Reverse at 2; R. 76). During his residency in the United States, he became a naturalized citizen (Pl.'s Mem. at 2). Mr. Mancari worked for thirty-nine years in the United States, during which he paid into the social security system (*Id.*). In July 2005, he was convicted of unlawful possession of a firearm by a felon and sentenced to 41 months in prison (R. 76). As a result of that conviction, Mr. Mancari was denaturalized and deported to Italy on October 10, 2007 (*Id.*). On November 1, 2007, the U.S. Department of Homeland Security notified the Commissioner of the Social Security Administration ("SSA") that Mr. Mancari had been deported (*Id.*).

On February 9, 2012, while living in Italy, Mr. Mancari applied for Old-Age Insurance benefits (R. 76). On March 9, 2012, the Commissioner notified him that his application for benefits was approved with an entitlement date of June 2012, but that the payment of his benefits was immediately suspended effective the date of his entitlement because he had been deported under the Immigration and Nationality Act (*Id.*). The SSA affirmed the decision to suspend Mr. Mancari's benefits initially and on appeal, and Mr. Mancari requested and received a hearing before an Administrative Law Judge ("ALJ") (*Id.*). Mr. Mancari (via telephone from Italy) and his attorney appeared at the hearing on June 13, 2013 (R. 84). Mr. Mancari's attorney presented argument, but no testimony was taken because Mr. Mancari's attorney stated that the facts were not in dispute (R. 102).

On July 12, 2013, the ALJ issued a written decision affirming the suspension of Mr. Mancari's Old-Age Insurance Benefits (R. 81). In his decision, the ALJ relied on *Flemming v. Nestor*, 363 U.S. 603 (1960), in which the Supreme Court held that Section 202(n) of the Act, which prohibits the payment of benefits to deported aliens, was constitutional (R. 78-79). The

ALJ held that the SSA's application of Section 202(n) to Mr. Mancari's case was proper and should be given deference (R. 77, quoting *Astrue v. Capato ex rel. B.N.C.*, 132 S. Ct. 2021, 2033 (2012) ("[t]he SSA's interpretation of the relevant provisions [of the Act], adhered to without deviation for many decades, is at least reasonable; the agency's reading is therefore entitled to this Court's deference under *Chevron* . . ."). On December 19, 2014, the Appeals Council declined Mr. Mancari's request for review, making the ALJ's ruling the Commissioner's final decision. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

### II.

Mr. Mancari does not dispute the facts of his case or contend that he was wrongfully deported. Rather, Mr. Mancari argues that this Court should reverse the ALJ's decision because the statute upon which it relies, Section 202(n) of the Act, violates the Equal Protection Clause, the Fifth Amendment Takings Clause, and the Fifth Amendment Due Process Clause of the United States Constitution (Pl.'s Mem. at 2). Although the ALJ did not have the authority to declare Section 202(n) unconstitutional, this Court, as "a court reviewing an agency determination under § 405(g)[,] has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 23 (2000). For the following reasons, we uphold the constitutionality of Section 202(n) and affirm the ALJ's decision.

### III.

"In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens. . . . The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is 'invidious.'" *Mathews v. Diaz*, 426 U.S. 67, 80 (1976). *See also Zadvydas v. Davis*,

3

533 U.S. 678, 693 (2001) ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders"). Thus, federal statutes that treat aliens differently from United States citizens do not violate the Constitution unless they are "wholly irrational." *Diaz*, 426 U.S. at 83.

In *Flemming*, the Supreme Court held that Section 202(n) "cannot be condemned as so lacking in rational justification as to offend due process." *Flemming*, 363 U.S. at 612. The Supreme Court reasoned that "[t]he fact of a beneficiary's residence abroad—in the case of a deportee, a presumably permanent residence—can be of obvious relevance to the question of eligibility [to Social Security benefits]. . . . Nor . . . can it be deemed irrational for Congress to have concluded that the public purse should not be utilized to contribute to the support of those deported on the grounds specified in the statute." *Id.*

More than 50 years after its issuance, *Flemming* remains the governing law on the constitutionality of Section 202(n). The following courts of appeal specifically foreclosed challenges to the constitutionality of Section 202(n) based on the Supreme Court's holding in *Flemming*. *See, e.g., Roman-Fernandez v. Attorney Gen. of U.S.*, 447 F. App'x 389, 391 (3d Cir. 2011); *Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 260 (3d Cir. 2001); *Smart v. Shalala*, 9 F.3d 921, 922 (11th Cir. 1993); *Martinez v. Mathews*, 564 F.2d 287, 288-89 (9th Cir. 1977). Other courts have assumed the validity of Section 202(n) of the Act without discussing its constitutionality. *See, e.g., United States v. Demjanjuk*, 486 F. App'x 532, 534 (6th Cir. 2012) (holding that widow's appeal of her deceased husband's denaturalization order was moot because the SSA terminated its payments to him when he was deported, and the SSA was not authorized to recommence payments until he was lawfully admitted to the country as a permanent resident, which was impossible since he was dead); *Lopez-Jaramillo v. Ashcroft*, 92

4

F. App'x 999, 1000 (5th Cir. 2004) (affirming the district court's denial of petitioner's request for Social Security benefits under 42 U.S.C. § 402(n)(1)); *Urban v. I.N.S.*, 123 F.3d 644, 649 (7th Cir. 1997) (noting, in *dicta*, that once deported, the petitioner "cannot collect her social security pension because of the Board's deportation order, *see* 42 U.S.C. § 402(n)(1)(A)"); *Marcello v. Bowen*, 803 F.2d 851, 856-57 (5th Cir. 1986) (affirming the SSA's denial of benefits to a deported alien who later reentered the United States without being lawfully admitted, because the Commissioner properly relied on the Notice of Deportation from INS).

## IV.

As these cases make clear, Mr. Mancari faces a steep uphill climb in challenging the constitutionality of Section 202(n). The arguments he raises in making that challenge are unpersuasive.

### A.

Mr. Mancari argues that Section 202(n) violates the Equal Protection Clause because it unconstitutionally treats aliens differently than naturally born citizens in that aliens who are incarcerated for committing a felony will be de-naturalized, deported, and so lose their benefits, while natural born U.S. citizens who commit the same crime will not be deported or lose their benefits (Pl.'s Mem. at 4-5).[2] Mr. Mancari cites *Jones v. Heckler*, 774 F.2d 997, 998 (10th Cir. 1985), as an example of this allegedly unequal treatment, because while that case upheld the constitutionality of a Social Security statute suspending a convicted felon's disability insurance benefits, the case also noted that the plaintiff -- a natural born U.S. citizen -- could have his benefits reinstated after incarceration or during incarceration if he participated in a rehabilitation

---

[2] As the Commissioner points out, the Fourteenth Amendment -- to which Mr. Mancari cites -- applies only to the states (doc. # 20: Def.'s Mem. in Opp'n at 5 n.4). Nevertheless, the Fifth Amendment applies to the federal government and also contains an equal protection component, which is analyzed the same as the equal protection clause under the Fourteenth Amendment. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995); *see also United States v. Speed*, 656 F.3d 714, 719-20 (7th Cir. 2011).

program (Pl.'s Mem. at 5-6). Mr. Mancari then concludes, without legal support, that "[t]here is no legitimate reasoning allowing incarcerated citizens to receive their benefits and disallowing deported aliens receipt of their benefits" (Pl.'s Mem. at 6).

This contention flies in the face of the controlling Supreme Court precedent that it is neither wholly irrational nor arbitrary to withhold benefits from "those deported on the grounds specified" in Section 202(n). *Flemming*, 363 U.S. at 612. For this reason, Mr. Mancari's argument that Section 202(n) unconstitutionally differentiates between deported aliens and those who voluntarily leave the country also fails (Pl.'s Mem. at 7).[3]

**B.**

Mr. Mancari also argues that Section 202(n) violates the Takings Clause of the Fifth Amendment because he has a legitimate property right in receiving his retirement insurance benefits after spending years paying into Social Security (Pl.'s Mem. at 7-8). Mr. Mancari argues that he was "vested in" and "entitled to" his Social Security old age benefits regardless of his deported status (doc. # 24: Pl.'s Reply at 5). Once again, Mr. Mancari's argument runs headlong into established Supreme Court precedent.

*Flemming* explicitly held that withholding benefits under Section 202(n) of the Act does not deprive a deported person of an "accrued property right" in violation of the Fifth Amendment. *Flemming*, 363 U.S. at 608. Mr. Mancari asks the Court to ignore the holding in *Flemming* in favor of the earlier case of *Lynch v. United States* 292 U.S. 571 (1934). In *Lynch*, the Supreme Court held that Congress took away property without just compensation in violation

---

[3]Mr. Mancari also argues that Section 202(n) unconstitutionally treats aliens deported for crimes differently from aliens deported for status violations (civil offenses), because apparently a 2005 congressional research report allows those who are deported for status violations to receive benefits (Pl.'s Mem. at 6). However, it is neither irrational nor wholly arbitrary for Congress to treat those who are found guilty of committing a crime differently from those who are found to have committed a civil violation.

of the Fifth Amendment when it annulled war risk insurance policies held by disabled soldiers, because those policies constituted contracts. *Lynch*, 292 U.S. at 576-80.

However, in *Flemming*, the Supreme Court held that employees covered by the Act have a "noncontractual interest" in receiving benefits, because unlike those whose right to benefits is based on their contractual premium payments, each worker's benefits under the Act, "though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation." *Flemming*, 363 U.S. at 609-10. The Supreme Court explained that "the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments." *Id.* at 610. Thus, the Supreme Court concluded, withholding benefit payments under Section 202(n) did not constitute a "defeasance of 'accrued' interests" in violation of the Fifth Amendment. *Id.* at 611. That reasoning controls here, and is fatal to Mr. Mancari's argument.[4]

## C.

Mr. Mancari also contends that the SSA's pre-termination administrative procedures violate the Due Process Clause of the Fifth Amendment (Pl.'s Mem. at 10-11). In support of this argument, Mr. Mancari cites to *Mathews v. Eldridge,* 424 U.S. 319 (1976), in which the Supreme Court held that the Due Process Clause of the Fifth Amendment does *not* require an opportunity for an evidentiary hearing prior to the termination of Social Security disability benefits. *Id.* at 349. However, Mr. Mancari argues that Section 202(n), unlike the rest of the Act, does violate

---

[4]Mr. Mancari also contends that this Court should ignore the holding in *Flemming* because the negative effects on the U.S. economy that the Supreme Court envisioned as one possible reason for Congress's enactment of Section 202(n) were now "utterly lacking in rational justification in today's society," where globalization and e-commerce would allow money going to Mr. Mancari in Italy "to flow back" to the United States (Pl.'s Mem. at 12-13). That kind of policy argument is more appropriately directed to Congress than to this Court, and in any event offers no sound basis to disregard controlling Supreme Court precedent.

7

the Due Process Clause because the Commissioner is prohibited from looking at the facts supporting the deportation decision before suspending benefits (Pl.'s Mem. at 11-12, citing *Marcello*, 803 F.2d 851). Mr. Mancari goes so far as to argue that the SSA should have made an independent investigation of the INS determination prior to suspending his benefits (Pl.'s Reply at 3).

Mr. Mancari's argument is a non-starter. In *Eldridge*, the Supreme Court held that "[s]ince a recipient whose [disability] benefits are terminated is awarded full retroactive relief if he ultimately prevails," due process does not require an evidentiary hearing prior to termination. *Eldridge*, 424 U.S. at 339-40. As *Eldridge* explained, retroactive relief may be awarded at any point during the Act's post-termination administrative procedures, including when the claimant seeks reconsideration by the state agency, receives an evidentiary hearing before an ALJ, requests discretionary review of the ALJ's decision by the Appeals Council, or obtains judicial review in federal court. *Id.*

Mr. Mancari availed himself of these post-termination administrative procedures in this case. Just because he was denied relief at each stage does not mean that he did not receive due process. Like the disability benefits discussed in *Eldridge*, Old Age Social Security benefits are not determined based on financial need, and thus, the procedures available to Mr. Mancari do not violate due process. *See Eldridge*, 424 U.S. at 340 (distinguishing *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970), which held that due process requires an evidentiary hearing prior to a temporary deprivation of welfare assistance, because welfare assistance was given based on financial need, to "persons on the very margin of subsistence," while financial need was not relevant to an award of disability benefits).

## CONCLUSION

For the aforementioned reasons, we deny Mr. Mancari's motion to reverse (doc. # 12), and affirm the Commissioner's denial of benefits. This case is terminated.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: July 21, 2016